*217 Opinion of the Court,
by Judge Mills.
THIS is an ejectment, brought by the appellee for the land included in the elder patent, as detailed in the case of forcible and detainer, just decided, of Hardage Smith, &c. vs. the same appellee, (ante 210,) and the facts and circumstances proved are substantially the same, except such small variations as may be noticed in this opinion. Although the points of law made by the instructions moved, are numerous, yet they are not the same with those which we have noticed in the writ of forcible entry and detainer.
The lessor of the plaintiff, now appellee, moved for ten different instructions, which were given. Although the sixth, to wit, “that it required the same solemnity to surrender possession, that it does to take one,” is not very intelligible, yet we count it too harmless, to disturb the judgment because it was given.
Hardage Smith and William Rains, the two appellants in the former case, are made parties to this, by serving the declaration in ejectment upon them ; but they are not made defendants. The declaration was also served on the appellant, Jones, and he and George Smith are made defendants, in lieu of the casual ejector, and not in lieu of Hardage Smith and Rains. Besides, as to the two latter, no common order was taken. Hardage Smith, as appears from the proof, holds a separate parcel from George and Jones, and Rains is his tenant; and Hardage Smith is used as a witness for appellants in this suit, and some of the instructions apply to George Smith and Jones’ land. From these circumstances, although there is no order expressly ting that the cause was tried as to George Smith and Jones alone, yet we conceive that the cause is not, was not, disposed of as to Hardage Smith and Rains, and that, as to them, it is still depending; and thus the court below has treated it upon the trial, and the lands held by Jones, and sold to him by George Smith, must be considered as alone in issue.
If a court once substantially gives tion^TieyTre not’bound to give It over ther instruction.
The appellate court will not decide on the propriety of granting new trials, moved for in the court below, on (he ground of the verdict being contrary to evidence, unless the bill of exceptions states that the record contains the whole evidence.
We have thought proper to premise this, because it c^ears ^ie cause at once of a great part of the defence set up in the forcible entry and detainer. The extension of the Pond farm, and that of Grove’s, and the enclosure of the spring, were all on the parcel conveyed Hardage Smith, and were all done since the date of that conveyance ; and, of course, no entry made by Hardage Smith, can avail George or Jones, claiming under him, although Hardage was agent for George; for there is not even a presumption, that he intended to take possession of the part of George, within the lines of the appellee; and if there was positive proof to that effect, we do not perceive how he could take possession for George, without some actual entry for him on his Hence, all the defence set up in that case, based on an actual entry, must be laid aside as inapplicable to the land now in contest.
The only defence which remains for the appellants in this cause, is. the sale to the appellee of the fifty nine acres covering his improvement, and the supposed Understanding or agreement then made, that he should surrender possession of the residue of his land, to the elder patent. The only objection against Jones and George Smith’s availing themselves of this defence, arises from the following state of facts: There were three elder patents covering the possession of the appellee, as stated in the former case, all adjoining each other, and each in different names. One of these patentees sued and recovered of the appellee, and then sold to him a part or the whole of what was recovered; so that the interest of that patentee is not involved in these controversies. One of the other patents was in the name of Weathers Smith, the grantee and ancestor of George and Hardage Smith, and what was included in his patent, is the chief subject of controversy in the case just decided. But the third patent was issued in the name of Muirhead, and all the title to that patent, shown by the appellants, is the record of a suit in chancery, in the name of the heirs of Weathers Smith, against certain persons therein styled the heirs of Muir-head, in which there is a decree that the defendants should convey to the heirs of Weathers Smith, the land contained in the patent, and a deed made by a commissioner.
*219 After the exhibition of this evidence, the court instructed the jury that the appellants had not shown, by any competent evidence, that they were entitled to the patent of Muirhead. As there was a total absence of proof that the persons against whom the decree was rendered, were the heirs of Muirhead, we conceive this instruction was correct. Weathers Smith, however, at the time he sold to the appellee the fifty nine acres, and during his life afterwards, and his heirs since his death, claimed the patent of Muirhead, and a portion of it is contained in the sale to the appellee of the fifty nine acres. The land now in contest in this suit is part of Muirhead’s patent, and as the part of Ha'rdage Smith was demarked to him, and conveyed by his father, out of the patent in his father’s name, and afterwards he made the entries recited in the forcible entry and detainer, as before said, they cannot avail the patent of Muirhead not embraced in Hardage Smith’s conveyance, which he held at the time of these entries.— Hence it may be objected, that as it is not shown that Weathers Smith held the patent of Muirhead, when the supposed agreement to relinquish the residue was made, and neither he nor his heirs have held it since, said agreement could have no effect, and if executed, he could not accept it on the part of Muirhead, so as to operate against the appellee. We, however, conceive this objection untenable. As he claimed the claim of Muirhead, and held under it, the possession acquired by such surrender, if made, would inure to the benefit of the real owner, and could not be held adverse to Muirhead, or the holder of his title. Hence we are disposed to account the appellee in the same situation, as to the surrender, if he did make it, as he would have been, if it had been made to the real owner of the elder title.
Having thus ascertained that this defence of a surrender, if it can be made appear, ought to avail the appellants in this suit, in which they still claim under Muirhead, we will proceed to enquire whether this defence was prejudiced by any instruction given in favor of the appellee, or Refused, when asked on the part of the appellants.
We do not deem it necessary further to notice nine out of the ten instructions asked by the appellee; for they are generally’ based on settled principles of law, *220 and it was correct to give them. The ninth instruc^on *n nntn^eri we cannot pass over. It is to this effeet: “ That the appellee’s offers to exchange for, or purchase the appellants’ title, could not be given in evidence to defeat his own title.” The title set up by the appellee, was twenty years’ adverse possession.— His patent and deed were of no service, further than to limit that possession, and his offers to purchase could not extinguish his claim.
But it may be said that this instruction was intended to lessen the effect of the evidence conducing to show that the appellee had surrendered his possession, and that, as the appellee, until the twenty years had expired, had but a bare possession, without title or right of possession, these attempts to purchase, ought to have their weight, as corroborating the supposed fact of surrender. If this evidence could have such effect, it is too slight to warrant a reversal, for the purpose of submitting it to the consideration of another jury. But we are not disposed to attribute to it any tendency to establish the surrender. It is more probable, that if the appellee still held his possession, he would wish to quit it, than that he would wish to purchase when he had no claim thereto. He must be aware, that his possession, before the twenty years elapsed, was held by a fragile and uncertain tenure, and that his adversary could terminate it by an entry. Hence existed strong inducements to purchase, or he might wish to lull his adversary into security and supineness, by these attempts. His wishes to negotiate, then, as much, or more, conduced'to show that he adhered to his claim, than that he had given it up. It is true, that his title or possession was not worse, after these unsuccessful attempts were-made, than before; and these attempts to purchase, did not conduce .to show that the possession was previously surrendered. There was, then, no error in giving the instruction as asked.
The first instruction asked by the appellants and refused, was wholly inapplicable to the state of facts in the case, and was therefore too abstract to be given, and we shall not recite it. The second was calculated to give the appellants the full benefit of all the defence they had, and was given by the court. It is to this effect: “ That if the appellant had surrendered the possession to the elder patent, he could not recover.”
*221 The third is, substantial!}’', “ that if the jury should believe, from the evidence, that the appellee did not take possession within the interference, twenty years before suit, and had not kept it uninterrupted during that time, he could not recover.” This instruction was refused, and it is objectionable for the following reasons: First, the commencement of it supposes a possible finding of the jury against a flood of uncontradicted testimony, when such finding was so highly improbable, that it cannot be said that the appellants sustained any injury by losing the instruction; and secondly, however sound in law the latter part may be, to wit, that a possession of twenty years must be continued and unbroken, when set up as a cause of action or defence, yet the only possible interruption set up by the eviv dence, was the supposed surrender of the appellee, when he purchased the fifty-nine acres. Of this the court had given the appellants the full benefit, by the second instruction; and the court could not be bound to give, in substance, the same instruction immediately over again, in a less direct and appropriate form; and if thus given, it could not be as beneficial to the appellants, or more enlighten the jury, than in the words in which it had been already given. The court, therefore, did not err in refusing it, as asked the second time.
The last instruction asked and refused, was, in substance, u that if the jury should find that the appellee had attorned to the elder patentee, he could not recover.” This supposes the appellee to have been the tenant of some other person, and then to have become the tenant of the appellee. As there was no evidence conducing in the slightest degree to show such a state of fact, it was right to refuse this instruction also.
Upon the question of a new trial, we will barely observe, that the bill of exceptions does not declare that it contains the whole evidence, and therefore the question need not be further noticed.
Judgment affirmed with costs.
Isham Talbot, Esq. one of the counsel for the appellants, presented the following petition for a rehearing:
The counsel for the petitioners, not having been favored with an opportunity of submitting his views of *222 this case to the court, previous to its decision, and fully impressed, not only with the justice of the cause he advocates, but with a thorough conviction, that manifest errors were committed by the court below, in giving some, as well as in withholding other instructions from the jury, which might and ought to have influenced their decision of the cause, feels himself constrained to ask of the court a rehearing of the cause; in which event, he flatters'himself he could maintain the positions which he will now glance at, in the few remarks which he begs leave to suggest, as grounds for the rehearing respectfully solicited.
On the trial before the jury, these facts were substantially, and it is believed, clearly and satisfactorily proved: That the appellee, Morrow, some time in the year 1707, entered on the land in contest, claiming under the younger patent of William Trimble, the land being included in different portions thereof, by the three elder contiguous and adjoining patents of Enoch Smith, Weathers Smith and Charles Muirhead, of which the heirs of W. Smith held that of their ancestor by gift and conveyance from him, and that of Muirhead in virtue'of a decree of the Jessamine circuit court, and a conveyance from commissioners, executed in obedience to the said decree; that Morrow, in a legal contest with Enoch Smith, in which the validity of his claim was put in issue, and finally decided by this honorable court, and had been adjudged entirely invalid and insufficient, upon the merits of the entry under which he claimed title, by which it was fully ascertained, that he could not compete successfully with any elder interfering patent, determined to abandon and did abandon, in utter despair of success, any farther contest with thé other interfering claims of W. Smith and Muirhead, and iri consequence of this determination, by the intercession of friends,, effected a purchase from Weathers Smith, out of the survey of said Smith and Muirhead, of fifty-nine acres, including a portion of his improvements, which was surveyed for him accordingly; and upon the consummation of this contract, he, Morrow, not only declared, in the most public and solemn manner, that he would surrender, but dkl actually surrender up to Ilardage Smith, acting not only in his own right, but as agent, under written authority from his brother, George, all possession and pretensions to all the lands theretofore *223 held, by him, under the claim of said Morrow, to all the land, it being unenclosed woodland, which was without the limits of his said purchase of fifty-nine acres, and within the lines of the said Hardage or George Smith; and from that time cautiously forbore to exercise any act of ownership over the said land, the possession of which was thus surrendered, resisting every temptation, and even solicitations for permission to get timber, the most suitable which he wanted for house-building, which was convenient to him in such woodland, and applying to and receiving from the said Hardage Smith, permission, at several different periods, to get from thence some fallen down elm trees, for the purpose of burning his brick-kiln, and at one time, a standing timber tree, for the purpose of making laths, to be used in a building he was then erecting; Hardage Smith, during this period, for himself, extending his improvements within the-said woodland, and for himself and as agent for his brother George, at all times entering on and taking timber for the use of their adjoining farms, and exercising freely and without control, every other act of ownership over the said woodlands, which their occasions required, and the condition of the said land would permit. Morrow, dui’ing all this period, interfering in no manner, either by word or deed, with these habitual and constant exercises of ownership; but declaring in whispers to some confidential friends, that he was awaiting the- lapse of twenty years from the period of his first settlement, to-assert his right to the said land, by an adverse possession for that period. A design as sly and cunning as it was unprincipled, was not only undertaken by the institution of this ejectment, but is well nigh its full and complete accomplishment, by the unexampled finding of the jury, on the trial in the circuit court, and which is only to be arrested by the success of this application to the justice of this honorable court, about being made the involuntary instrument of as gross injustice, in the opinion of your petitioners, as ever flowed through the channels of a court of justice.
This verdict, having been thus obtained, not only without title, but against the acknowledged owners of the legal title, the plaintiff’s title having been solemnly adjudged to be invalid, even in equity, by the highest tribunal in the country, and all further pretensions to the land, not only as regarded title, but possession, havr *224 ing been abandoned and surrendered up. by the plaintiff, will not this court feel itself impelled by every consideration of justice, to examine with eagle eyes, any aberration the most minute, every error, however slight or trivial, if such be found in the various instructions and opinions given by the court to the jury, during this trial? And iyill it not be matter of astonishment, if, in tén different instructions moved for on the part of the plaintiff, to furnish a pretence or apology to a jury for this astonishing verdict, and each and every one of them unhesitatingly given, and in four points moved by the defendant, and each of them overruled by the circuit court, no error will be found, which can justify the ai’resting so unfounded and so unjust a verdict? With all due respect for the opinion of this honorable court, it is believed that a calm and full review of the various points decided by the circuit court, will present to the view of your honors, more than one deviation from what the law is, on the points moved for by the-instructions, and that this, if not expressly admitted in the opinion itself, is to be distinctly implied from the language employed in the opinion; and that if this shall be found to be the case, it is confidently believed, that the inference drawn by the court, that such error, if committed, is rendered harmless by some other opinion, given on some other point of the said instructions, is not warrant-able in such a case as this, if it shall be found to be so in any other case, differently circumstanced, and where the verdict of the jury shall have been rendered according to the right and justice of the case.
For example, this court, in their opinion on the sixth instruction given by the court below, which was, “ that it requires the same solemnity to surrender that it does to take possession,” expressly admit, that the instruction is not very intelligible; but deem it too harmless in its consequences, to disturb the verdict. This course of reasoning might be correct, and be entitled to some weight, if the court were satisfied of the justice of the verdict, or of its conformity with the law and evidence in the case; but in a case of such enormity as this is deemed to be, and where it is difficult to conjecture under what other influence than that of the grossest ignorance or strongest bias or corruption of the jury, such- a finding is to be ascribed, when we perceive an instruction .given to the jury-, at the instance and in the words of *225 ihe plaintiff’s counsel, which is acknowledged by the court to be unintelligible, it it more correct to ascribe to this darkness, and want of clearness and intelligence in the court’s instructions, this extraordinary and unjust verdict, or to ascribe to this, with other points on which the jury were instructed, equally dark, ambiguous or unintelligible, that bewilderment of the minds of the jury, which has produced a verdict as unjust and erroneous as it is believed unprecedented?
In that part of the opinion in which the court recapitulates the facts which evince to them a strong and clear distinction between this case and that of the forcible entry and detainer against Hardage Smith, it is observed, that “Hardage intended to take possession of the part of George, within the lines of the appellee ; and if there was positive proof to that effect, we do not perceive how he could take possession for George, without some actual possession for him on his part.” With great submission, it is respectfully suggested, that this recitation is not in precise conformity with the proofs, as exhibited in the exceptions, it being expressly and positively proved by Hardage Smith, “that Morrow did surrender to Weathers Smith, when the bond for fifty-nine acres was executed by Weathers Smith to him, all land outside of the boundary of the fifty-nine acres; and that he, Hardage, took possession of the land as the agent of Weathers Smith, in 1808 or 1809, and continued in the possession ever since, and used said land as woodland, he and those claiming under Weathers Smith; that he, Hardage, took possession of his land, interfering with Morrow, in the year 1813, and George took possession of his land in 1814,” evidently meaning, as the context and the whole deposition will evince, that it was of the land now in contest; and Sarah Young and others expressly prove, that it was the constant habit of George Smith, at all times when his occasions required it, to enter and take timber therefrom.
From this, it would seem to the counsel for the appellants, that the facts of actual and repeated entries, on the part of George Smith, if not in person, by his agent, Hardage Smith, and his tenant, Jones, are not only established ’by testimony deemed incontrovertible, but that such possession was entirely exclusive, never having been questioned or interrupted on the part of MorI’ow; bqt by him so entirely acquiesced in, as to ask *226 and receive, as a favor, from Hardage, as the agent of his brother George, timber for making laths, as before alluded to.
Another point in the decree, in which it is respectfully contended that this court have erred, is that in which they affirm the correctness of the opinion of the court below, on the motion of the plaintiff to instruct the jury, that the defendants had shown no right in themselves to be availed of the elder patent of Muir-head, there having been no evidence produeed to prove that the persons whose title had been conveyed by the commissioners, under the decree of the Jessamine circuit court, as the heirs of the said patentee, were really such. When it is considered that these persons had been sued by Weathers Smith, in a court of equity, having jurisdiction of the cause; that to this cause, the persons thus sued, had regularly appeared in the usual forms, recognizing the character in which they were there impleaded ; and that after defending the case upon its merits, a regular decree had been pronounced against them for a conveyance of the land in contest, and this decree carried into full effect, by a conveyance from the commissioners, appointed hy the court; and that subsequent to these transactions, the plaintiff, Morrow, has purchased, and himself taken a conveyance of the title there decreed ; it is respectfully submitted, whether, in a contest in which the defendants are only defending and protecting themselves and their possession, under the same title, thus recognized by the plaintiff, derived from and sanctioned by the record of a court of justice, having competent jurisdiction of the cause, the plaintiff is not estopped from taking and urging this objection, and whether any rule of evidence does or can exist, requiring further evidence of this fact; and whether the record was not at least prima facie evidence of this fact of heirship, which it so clearljr imports, until some cause to question, or even to suspect the fact, shall have been made appear.
Another point in which it is respectfully conceived this court has erred, is that in which is affirmed the correctness of the instruction given by the court below on the.ninth point moved by the counsel for the plaintiff there, which was, “ that the plaintiff’s offer to exchange for or purchase the' defendant’s title, could not be given as evidence to defeat his own title.”
*227 This instruction is couched in language so vague and indefinite, as to be either unintelligible, or must appear, as far as it can be understood, inapplicable and irrelevant to the present case; and, on that account, as instrumental in bewildering an ignorant jury, in the highest degree improper to be given. As the plaintiff pretended no title to the land in contest, and was endeavoring to recover on a naked adversary possession of twenty years, what title did he pretend to, or to what title did the counsel allude, in asking, or the court in instructing, the jury on this point ? This honorable court, in their opinion, admit that he had none, and expressly state, that his title papers could only be exhibited to show the extent of the boundary to which he claimed possession. And again, it is not shown or pretended that the offers to exchange or purchase, on the part of the plaintiff, were given in evidence by the defendant, to defeat the plaintiff’s title, who had, or pretended to have, no title. Is the instruction, therefore, moved for and given, other than impertinent and irrelevant? And is it also harmless? And if this and all other like instructions, are deemed harmless or unintelligible, to what else are we to ascribe this verdict.
It is respectfully contended, that in the first instruction asked for by the counsel for the plaintiff, and given by the court, which is in these words, “ that if the jury believe, from the evidence in the cause, that Morrow had adverse possession for twenty years, of the land in controversy, before the entry of Jones in the year 1820, the law is for the plaintiff,” the court egregiously erred, inasmuch as the motion is asked and the instruction is given, upon the assumption of fact, that no entry for or on bghalf of George Smith, had been made previous to that of Jones in the year 1820, when, as has been previously and conclusively shown, not only had the plaintiff made a solemn surrender of the possession of this land to Hardage Smith, for himself and all those claiming under his father, but frequent and repeated entries, with the exercise of reiterated acts of ownership, had been made on the land in contest, by the agent and tenant of the said George, long anterior to the year 1820, to which the attention and inquiry of the jury are confined by this erroneous instruction.
The counsel for the appellant will not farther exhaust himself, or fatigue the court, by going through *228 with an examination of all the other instructions given or vefusec^ hy the court on the trial; but will content himself with remarking, that several of them, although in the general principles which they embrace, may, or might have been correct in cases to which they might properly apply, were wholly inapplicable to the state of facts, as presented to the jury by the evidence in this cause; and being irrelevant here, could only have produced the effect for which they were -intended by the counsel for the plaintiff, entirely to mislead the jury from the consideration of the present case, when only one or two poiuts, clear and simple in their application, were necessary for the correct information of the jury, or to a proper decision of the cause.
It is much to be regretted, that in this and several other cases, an omission of counsel to state that.the evidence contained in the bill of exceptions, although it purports to contain the whole case, and is fairly presumed to have omitted nothing essential in the case, should, in the opinion of the court, preclude them from an examination of the opinion of the court below on the motion for a new trial; and án examination of the reasons on which such an opinion is founded, as well as upon the whole case, is respectfully asked, by
- I. TALBOT, for Jlpp'ts.
But the court, on consideration, overruled the petition.